IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| LORENZO LOPEZ, | |
| --- | --- |
| *Plaintiff,* | |
| v. | CIVIL ACTION No. 17-2183 |
| JOHN SROMOVSKY, *et al.,* | |
| *Defendants.* | |

PAPPERT, J.                                                                                                  February 27, 2018

## MEMORANDUM

Lorenzo Lopez asserts claims pursuant to 42 U.S.C. § 1983 and Pennsylvania law against Pennsylvania State Trooper John R. Sromovsky and State Police Commissioner Tyree C. Blocker for alleged use of excessive force. Blocker moves to dismiss all claims against him.[1] The Court grants the motion but will allow Lopez to file a Second Amended Complaint.

**I**[2]

On September 9, 2016, Lopez was pulled over on suspicion that he was driving under the influence of alcohol or a controlled substance. (Am. Compl. ¶ 15, ECF No. 8.) After a field sobriety test, Lopez was arrested and placed in handcuffs in the back of a police car. (*Id*. at ¶ 16.) While secured in the back of the car, Lopez "voic[ed] his

---

[1] Sromovsky is unrepresented and the clerk entered default against him on November 7, 2017.

[2] The facts are derived from the Amended Complaint, matters of public record and documents integral to or explicitly relied upon in the Amended Complaint, *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014), and are taken as true and viewed in the light most favorable to Lopez, *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

1

frustration at how he was being treated by police, and exhibited that he was emotionally upset." (*Id.* at ¶ 18.)

Lopez claims this provoked Trooper Sromovsky. He contends that Sromovsky asked why he was crying and stated, "I'll give you a reason to cry bitch!" before striking Lopez in the face. (*Id.* at ¶ 19.) The two then allegedly engaged in an argument that led to Lopez being pulled from the car and assaulted further. (*Id.* at ¶¶ 19 – 20.) Lopez sustained injuries to his face and other parts of his body, including "extreme pain, contusions, permanent scarring, and severe emotional trauma." (*Id.* at ¶¶ 20, 22.)

On January 17, 2017, Sromovsky was arrested and charged with assault, harassment, official oppression and making terroristic threats in the Chester County Court of Common Pleas. (*Id.* at ¶ 24.) Lopez relies on Sromovsky's criminal case and cites its docket in support of his claims. (*Id.* at ¶¶ 24 – 25.) The Amended Complaint states that PSP Sergeant Gerald McShea was one of the arresting authorities, *id.* at ¶ 24, and a review of the docket reveals that the charges were initiated by Pennsylvania State Police ("PSP") Internal Affairs, *see* Docket, *Pennsylvania v. Sromovsky*, CP-15-CR-00001137-2017 (Chester County Pa. Ct. Common Pleas Apr. 4, 2017). Sromovsky was acquitted on November 16, 2017 of official oppression and making terroristic threats but the jury was unable to reach a verdict on the assault charge.[3] *See* Jury Verdict, *Pennsylvania v. Sromovsky*, CP-15-CR-00001137-2017 (Chester County Pa. Ct. Common Pleas Nov. 16, 2017).

On May 12, 2017, Lopez filed this lawsuit. In response to Blocker's first motion to dismiss (ECF No. 7), Lopez filed an amended complaint as of right. The Amended

---

[3] The case is currently scheduled for another trial on March 8, 2018. *See* Docket, *Pennsylvania v. Sromovsky,* CP-15-CR-00001137-2017.

2

Complaint asserts seven claims under 42 U.S.C. § 1983 and state law. Counts I – III allege abuse of process, battery and intentional infliction of emotional distress against Sromovsky. (Am. Compl. ¶¶ 33 – 52.) Counts IV – VII assert supervisory liability claims against Blocker in his individual capacity. (*Id.* at ¶ 14.) Lopez contends that at all times relevant to the charged conduct, Blocker, as PSP Commissioner, "was responsible for and engaged in the making and carrying out of policy regarding the recruiting, hiring, training, monitoring, supervising, disciplining and assigning" of troopers. (*Id.* at ¶ 11.) Count IV alleges that Blocker failed to adequately train, supervise and correct PSP troopers. (*Id.* at ¶¶ 53 – 62.) Count V claims that Blocker was deliberately indifferent to a constitutionally deficient policy, custom and practice of acquiescing to police misconduct. (*Id.* at ¶¶ 63 – 69.) Finally, Counts VI and VII assert excessive force and retaliation claims against Sromovsky and Blocker. Lopez argues that Blocker is liable for Sromovsky's conduct because he exhibited deliberate indifference to Lopez's rights. (*Id.* at ¶¶ 75 – 76; 82 – 83.)

The four claims asserted against Blocker are duplicative and boil down to an allegation that Blocker was aware of a prior incident in which Sromovsky impermissibly used excessive force and failed to adequately respond by either implementing a new training program on the use of excessive force or effectively disciplining Sromovsky. (*See id.* at ¶ 2 (Plaintiff "seeks redress for the willful failures of its current Commissioner to sufficiently discipline, train, supervise and correct a custom of the use of excessive force[.]"); *id.* at ¶ 14 ("Blocker is being sued in his individual capacity for failure to train, supervise and correct those under his command and for failing to ensure the absence of violence[.]").

In November 2012, Mohamed Farvardin sued Sromovsky and then PSP Commissioner Frank Noonan. (*Id.* at ¶ 29.) The *Farvardin* complaint alleged that during the course of an encounter with Farvardin, Sromovsky and other troopers threw him to the ground, handcuffed him and pushed his face into the pavement. (*Id.* at ¶ 30.) The claims against Sromovsky were settled, but in December of 2014, judgment was entered against Noonan on the failure to train claim. (Am. Compl. ¶ 31 – 32.) Judge Rufe found that "the PSP academy is providing inadequate training in identifying mere encounters and complying with constitutional limits on authority and use of force during such encounters, and the troopers and supervisor involved in the incident with Dr. Farvardin were inadequately trained." Adjudication & Opinion at 13, *Farvardin v. Santos, et al.*, No. 12-6680, 2014 WL 7150023 (E.D. Pa. Dec. 15, 2014), ECF No. 44. On April 21, 2015, Judge Rufe ordered that all current troopers and incoming cadets attend mandatory in-service training on citizen's rights during mere encounters and that the PSP revise its procedures for responding to citizen complaints by conducting a full internal affairs investigation, including adjudication if necessary. Order, *Farvardin v. Santos, et al.*, No. 12-6680 (E.D. Pa. Apr. 21, 2015), ECF No. 51. Blocker was nominated to serve as PSP Commissioner on August 3, 2015. (Am. Compl. ¶12.)

Blocker moves to dismiss all claims against him for failure to state a claim under Rule 12(b)(6). (Mot. to Dismiss, ECF No. 11.) He argues that the allegations in the complaint fail to show that he was personally involved in the alleged violations against Lopez, that he had knowledge of a prior pattern of similar conduct or that he was deliberately indifferent to an unreasonable risk. (Mot. at 8–9.)

II

A

To survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

*Twombly* and *Iqbal* require the Court to take three steps to determine whether a complaint will survive a motion to dismiss. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, it must "take note of the elements the plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Next, it must identify the allegations that are no more than legal conclusions and thus "not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, where the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation

omitted).  "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption."  *Id.*  This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* (quoting *Connelly*, 809 F.3d at 786–87).

The plausibility standard, however, "does not impose a heightened pleading requirement" and does not require a plaintiff to plead specific facts.  *Id.*  In other words, "courts cannot inject evidentiary issues into the plausibility determination."  *Id.*  The Third Circuit has also made it clear that "at least for purposes of pleading sufficiency, a complaint need not establish a *prima facie* case in order to survive a motion to dismiss" because a "prima facie case is an evidentiary standard, not a pleading requirement and hence is not proper measure of whether a complaint fails to state a claim."  *Connelly*, 809 F.3d at 789 (internal quotations and citations omitted).  Instead, a plaintiff should plead "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements."  *Id.* (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008)).

B

Section 1983 provides a right of action against any person, who under the color of state law, deprives or causes another to be deprived of a Constitutional or federal statutory right.  42 U.S.C. §1983.  Supervisory officials may only be found liable under §1983 for their own unconstitutional conduct.  *Iqbal*, 556 U.S. at 676; *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds by Taylor v. Barkes*, 135 S. Ct. 2042 (2015).  "It is well-recognized that '[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory

6

of *respondeat superior.*'" *Barkes*, 766 F.3d at 316 (quoting *Bistrian v. Levi*, 696 F.3d 352, 366 (3d Cir. 2012)) (modifications in original); *Iqbal*, 556 U.S. at 676 (2009). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each [supervisor], through [their] own individual actions, has violated the Constitution." *Bistrian*, 696 F.3d at 366 (quoting *Iqbal*, 556 U.S. at 676).

The Third Circuit Court of Appeals has articulated two theories of supervisory liability under §1983. First, a supervisor may be liable if he or she: "[1] participated in violating the plaintiff's rights, [2] directed [subordinates] to violate them, or, [3] as the person in charge, had knowledge of and acquiesced' in the subordinate's unconstitutional conduct." *Barkes*, 766 F.3d at 316 (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)). Alternatively, a supervisor can be held liable if, "'with deliberate indifference to the consequences,'" he or she "'established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *Id*. (quoting *A.M. ex rel. J.M.K.*, 372 F.3d at 586) (modification in original).

"'Failure to' claims—failure to train, failure to discipline, or [] failure to supervise—are generally considered a subcategory of policy or practice liability." *Id*. Plaintiff must satisfy a four-part test to prevail on a "failure to" theory. "The plaintiff must identify a supervisory policy or practice that the supervisor failed to employ, and then prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the

supervisory practice or procedure." *Id.* at 317 (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)).[4] *Cf. Palakovic v. Wetzel*, 854 F.3d 209, 225 n.17 (3d Cir. 2017) (suggesting that "failure to" liability under *Sample* may no longer be viable post-*Iqbal*).

III

The sparse and largely conclusory allegations in Lopez's complaint fail to state a plausible claim against Blocker. Even assuming Blocker knew that Sromovsky used excessive force in the *Farvardian* incident, Lopez has failed to allege any personal involvement or deliberate indifference on the part of Blocker such that he can be held personally liable for Lopez's claimed harm.

A

Lopez has failed to allege facts sufficient to show that Blocker was directly involved in the alleged conduct, nor does he allege any facts from which the Court could infer that Blocker participated in the assault, was present when the assault occurred, or personally directed Sromovsky's conduct in this case. Lopez does not allege that Blocker adopted a facially unconstitutional policy or practice that caused the alleged assault. The only attempt Lopez makes to connect Blocker to Sromovsky's conduct in this case is by claiming that Blocker had "actual knowledge of Sromovsky's conduct in the *Farvardin* case" and "acquiesced in Sromovsky's retention as a Trooper" following *Farvardin*. (Am. Compl. ¶ 55.) For a supervisor to be liable through knowledge and acquiescence, however, "the supervisor must contemporaneously know of the violation

---

[4] After the Supreme Court's decision in *Iqbal*, the Third Circuit expressed uncertainty on the continued viability and scope of supervisory liability. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 n.8 (3d Cir. 2010). While the Third Circuit affirmed the continuing viability of the *Sample* test for § 1983 claims based on deliberate indifference to a medical need under the Eighth Amendment in *Barkes*, it left open the "question whether and under what circumstances a claim for supervisory liability derived from a violation of a different constitutional provision remains valid." *Barkes*, 766 F.3d at 320. Because Lopez has failed to state a claim under the Court's pre-*Iqbal* tests for supervisory liability, the Court need not decide whether *Iqbal* limits such liability in excessive force cases.

8

of a plaintiff's rights and fail to take action." *Anderson v. City of Philadelphia*, No. 16-5717, 2017 WL 550587, at *4 (E.D. Pa. Feb. 10, 2017) (citing *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1294 (3d Cir. 1997) ("Where a supervisor . . . knows that the subordinate is violating someone's rights but fails to act to stop the subordinate from doing so, the factfinder may usually infer that the supervisor 'acquiesced' in . . . the subordinate's conduct."), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)).

Lopez has not alleged any facts which could show that Blocker had contemporaneous knowledge of his alleged assault, nor has he alleged any facts suggesting that Blocker failed to take action, disciplinary or otherwise, in response. Lopez's reliance on Blocker's purported knowledge of the underlying facts in the *Favardian* case does not support a claim that Blocker knew of and acquiesced in the instant alleged violation of Lopez's rights. *See Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) ("[Plaintiff's] allegations did not describe [supervisors'] conduct in sufficient detail to support her conclusory allegations that they had either actual contemporaneous knowledge of or any personal involvement in any violation of her constitutional rights."); *Anderson*, 2017 WL 550587, at *4 ("The acquiescence required to state a claim must derive from the supervisor's contemporaneous personal knowledge of the underlying offending incident[.]").

B

Lopez's claim against Blocker is really one of deliberate indifference. *See, e.g.*, Am. Compl. ¶¶ 2, 14.) Lopez conclusorily asserts that the PSP have a "long established policy, custom and practice of routinely acquiescing in police misconduct against people,

9

and of not taking obvious and necessary measures to prevent acts of police misconduct." (*Id.* at ¶ 65.) Lopez claims that Blocker both maintained this constitutionally deficient custom or practice and failed to provide adequate training, supervision, or discipline in the face of an unreasonable risk of the use of excessive force. (*See id*. at 58, 66.)

A supervisor exhibits deliberate indifference "if the supervisor 'knew or was aware of and disregarded an excessive risk[.]'" *Palakovic*, 854 F.3d at 225 n.17 (quoting *Beers-Capitol v. Whetzel*, 256 F.3d 120, 135 (3d Cir. 2001)); *Thomas v. Cumberland Cty.*, 749 F.3d 217, 223 (3d Cir. 2014) ("Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."). Lopez apparently contends that knowledge of Sromovsky's conduct in the *Farvardin* case is sufficient to state a claim that Blocker knew of an excessive or obvious risk that Lopez's rights would be violated. Again, even assuming Blocker knew of Sromovsky's conduct in the *Farvardin* case, knowledge of that incident alone is insufficient to support a deliberate indifference claim.

To state a deliberate indifference claim, Lopez must sufficiently allege a *pattern* of prior misconduct giving rise to an excessive risk. "Failure to" claims "can ordinarily be considered deliberate indifference only where the failure has caused a *pattern* of violations." *Berg v. Cty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000) (emphasis added); *see also Owens v. Coleman*, 629 Fed. App'x 163, 167 (3d Cir. 2015) (citing *Connick*, 563 U.S. at 63) ("A pattern of similar constitutional violations is typically necessary to demonstrate deliberate indifference for purposes of failure to train."). Further, a deficient custom is established "by showing that a given course of conduct, although not specifically endorsed or authorized by law, is *so well-settled and*

10

*permanent* as virtually to constitute law." *Watson v. Abington Twp.*, 478 F.3d 144, 156 (3d Cir. 2007) (quotation omitted) (emphasis added).

A single offense by a lower level employee "does not suffice to establish either an official policy or a custom." *Fletcher v. O'Donnell*, 867 F.2d 791, 793 (3d Cir. 1989) (citation omitted); *Wood v. Williams*, 568 Fed. App'x 100, 105 – 06 (3d Cir. 2014) (upholding dismissal of failure to train claim when complaint included only one prior incident of potentially unconstitutional conduct); *Anderson*, 2017 WL 550587, at *5 (dismissing supervisory liability claim because plaintiff's claim that the officer "had previously on one occasion been suspended for misconduct is not enough"); *Nace v. Pennridge Sch. Dist.*, 185 F. Supp. 3d 564, 577 (E.D. Pa. 2016) ("One incident does not constitute a 'pattern of violations.' ").

The cases cited by Lopez in his response to Blocker's motion support the Court's decision. *See, e.g.*, *Barber v. Pennsylvania State Police*, No. 06-1713, 2007 WL 2071896, at *4 (W.D. Pa. July 19, 2007) (denying motion to dismiss where plaintiff alleged that "officers . . . 'on numerous occasions used excessive physical force on individuals'" and that "'[n]umerous legal claims were brought against the PSP for this conduct prior to the events detailed within this Complaint.'"); *Zion v. Nassan*, 727 F. Supp. 2d 388, 393 (W.D. Pa. July 23, 2010) ("[Supervisors] received specific information and reports with respect to [officer's] propensity for violence, misconduct while on duty, record of physical confrontations with other state and local police officers and supervisors, and [a] fatal shooting . . . . Although [supervisors] were aware of violent episodes in [officer's] past, they did not order training to address these problems.").

C

Lopez argues that "under specific circumstances, the need for training of subordinate actors 'can be said to be so obvious . . . that failure to do so could properly be characterized as deliberate indifference to constitutional rights,' even without a pattern of constitutional violations. (Resp. in Opp. at 8, ECF No. 12.) The classic example given by the Supreme Court of this obvious "single-incident" is training on the use of deadly force:

> For example, city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force, can be said to be "so obvious," that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights.

*City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989) (citation omitted). "Liability in single-incident cases depends on '[t]he likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights.'" *Thomas*, 749 F.3d at 223–24.

In support of this argument, Lopez states only that "common sense should lead one to conclude that an incident as noteworthy" as PSP officers and the Commissioner being sued and the resulting court order "could not have escaped the attention of Blocker" nor "have been ignored by him." (Resp. at 8 – 9.) First, for the purposes of this motion, the Court, casting the facts in the light most favorable to Lopez, has assumed that Blocker knew of Sromovsky's conduct in the *Farvardian* case. Second, the fact that a lawsuit was filed—even one resulting in a settlement and a finding of liability—does not in itself convert a single incident of excessive force into a situation where the need for training is "so obvious." Judge Rufe's decision was not based on a

12

custom or pattern of using excessive force; rather, her decision was based on the obvious need for trooper training on citizen's rights in mere encounters versus investigatory or custodial stops. Adjudication & Opinion at 13 – 14, 16. Nor does a prior lawsuit increase the likelihood that the situation will reoccur. Judge Rufe's order requiring training on citizen's rights during mere encounters, investigatory stops and custodial seizures would, presumably, decrease the likelihood that an incident like *Farvardian* would reoccur. Here, Sromovsky is alleged to have punched Lopez and thrown him to the ground without any apparent justification or legitimate provocation. This conduct is neither "so obvious" nor its likelihood of reoccurrence so great that Lopez has sufficiently pled a claim against Blocker for deliberate indifference.

IV

Lopez has failed to state a claim against Blocker for supervisory liability under any of the applicable theories, and all claims against Blocker are dismissed. "[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007); *see also Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002). Under Federal Rule of Civil Procedure 15(a), "courts may grant . . . amendments 'when justice so requires.'" *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2004) (citing Fed. R. Civ. P. 15(a)). Lopez may file a Second Amended Complaint, consistent with this Memorandum, by March 13, 2018.

An appropriate order follows.

13

BY THE COURT:

***/s/ Gerald J. Pappert***
GERALD J. PAPPERT, J.