IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LORENZO LOPEZ,

        *Plaintiff*,

v.

JOHN SROMOVSKY,

        *Defendant.*

CIVIL ACTION
No. 17-2183

**PAPPERT, J.**                                                                                                                                                                                                                                                                   June 27, 2018

## **MEMORANDUM**

Lorenzo Lopez asserts claims pursuant to 42 U.S.C. § 1983 and state law against Pennsylvania State Trooper John R. Sromovsky for the use of excessive force during Lopez's drunk driving arrest. Sromovsky has not answered or otherwise defended,[1] default has been entered against him and Lopez moves for default judgment. (ECF Nos. 13, 18.) After a May 10, 2018 evidentiary hearing on Lopez's Motion (ECF No. 26) and upon consideration of counsel's supplemental briefing (ECF No. 27), the Court grants in part and denies in part the Motion for the reasons that follow. Judgment is entered in Lopez's favor on Counts II, VI and VII of his Amended Complaint alleging battery, excessive force and retaliation and for Sromovsky on Count III for intentional infliction of emotional distress.

---

[1]     On June 7, 2018, subsequent to Sromovsky's criminal conviction for the conduct which forms the basis of this civil suit, counsel entered his appearance but has not participated in the case. (*See* ECF No. 29.)

I

A

The Court relies on the facts asserted in the Amended Complaint and the evidence submitted at the hearing,[2] including the video evidence offered by Lopez. (*See* Am. Compl., ECF No. 8; Hr'g Tr., ECF No. 28; Pl.'s Ex. 2.)[3] On the evening of September 9, 2016, Lopez was pulled over by Pennsylvania State Trooper Andrew Revels on suspicion of driving under the influence of alcohol or a controlled substance. (Am. Compl. ¶ 15; Pl.'s Ex. 2 "Revels Video" at 1:27; Hr'g Tr. at 16–17.) The stop was

---

[2] While a defaulting party that has not responded to the complaint is generally "deemed to have admitted all well-pleaded factual allegations contained therein[,]" *Freedom Med., Inc. v. Gillespie*, No. 06-3195, 2013 WL 12241133, at *1 (E.D. Pa. July 23, 2013) (citing *Thomson v. Wooster*, 114 U.S. 104 (1885)); *see also Jimenez v. Rosenbaum-Cunningham, Inc.*, No.07-1066, 2010 WL 1303449, at *2 (E.D. Pa. Mar. 31, 2010) ("The court should accept as true the well-pleaded factual allegations of the complaint when considering a motion for a default judgment, but it need not accept the moving party's legal conclusions or factual allegations related to the amount of damages." (citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)), the Court is permitted to hold a hearing when, to enter or effectuate judgment, it needs to "determine the amount of damages," "establish the truth of any allegation by evidence" or "investigate any other matter," Fed. R. Civ. P. 55(b)(2); *see also Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 496 (5th Cir. 2015) ("When it seems advantageous, a court may conduct a hearing to determine whether to enter a judgment by default. . . . The court, in its discretion, may require some proof of the facts that must be established in order to determine liability." (quoting 10A Charles A. Wright et al., Federal Practice & Procedure § 2688 (3d ed. 1998))).

The Court held a hearing at Lopez's request, during which Lopez offered video evidence in support of his request for damages. Consistent with Third Circuit precedent which favors resolution of litigation on the merits, *see Kelly M. v. Luzerne Intermediate Unit*, 71 F. App'x 116, 118 (3d Cir. 2003) (citing *Zawadski de Bueno v. Bueno Castro*, 822 F.2d 416, 420 (3d Cir. 1987)); *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984) (noting that the Third Circuit has "repeatedly stated [its] preference that cases be disposed of on the merits whenever practicable"), and the Supreme Court's decision in *Scott v. Harris*, 550 U.S. 372 (2007), the Court adopts the facts established by, and rejects those inconsistent with, the video evidence. The Court has disregarded only those alleged facts that were "irrefutably established" to be false or "blatantly contradicted" by the video. *See Mills v. City of Harrisburg,* 589 F. Supp. 2d 544, 553 n.5 (M.D. Pa. 2008), *aff'd*, 350 F. App'x 770 (3d Cir. 2009); *Morgan v. Borough of Fanwood*, 680 F. App'x 76, 80 (3d Cir. 2017) ("When, as here, there is reliable video footage of the facts in the record, we view the facts in the light as depicted by the videotape."); *White v. City of Lancaster*, No. CV 16-4225, 2018 WL 1210588, at *3 (E.D. Pa. Mar. 6, 2018) ("The United States Supreme Court has specifically held that trial courts must 'view the facts in the light depicted by the videotape' if videotape evidence exists." (quoting *Scott*, 550 U.S. at 381)).

[3] Plaintiff's Exhibit 2 is a thumb drive containing video feed from four troopers' car cameras. (*See* Pl.'s Ex. 2; Hr'g Tr. at 11.) The most pertinent videos are those from the cameras in Troopers Revels and Sromovsky's cruisers.

video and audio recorded by Revels' dashboard camera. (*See* Revels Video.) The footage shows Revels conducting field sobriety and breathalyzer tests, after which Lopez, who is visibly intoxicated, is arrested. (Am. Compl. ¶ 16; Revels Video at 6:12–12:40.) As Revels begins to handcuff Lopez, he stiffens his arms,[4] prompting Officer Cavanaugh, another responding officer apparently from a local police department, to assist Revels in restraining and cuffing Lopez. (Revels Video at 12:40–13:23.)

Moving out of the camera's view, Trooper Revels then attempts to put Lopez into his police car. (*Id.* at 13:23–28.) The camera's audio captures a struggle between the two. (*Id.* at 13:28–16:00.) Revels repeatedly tells Lopez, who is belligerent and uncooperative, to sit but he resists—grunting, raising his voice, saying no and hold on, using obscenities and crying. (*Id.*) After about a minute, Revels calls for backup stating, "He's fighting." (*Id.* at 14:43–46.) Eventually, Revels gets Lopez seated and belted in the front passenger seat of Revels' car (*id.* at 13:32, 16:00–10; Am. Compl. ¶ 17) and rotates the dashboard camera to face Lopez, (Revels Video at 16:00–10; Am. Compl. ¶ 18).

Sromovsky then arrives at the scene. (*See* Revels Video at 15:57; Pl.'s Ex. 2 "Sromovsky Video" at 1:42.) He immediately opens the front driver's side door to speak to Lopez. (Revels Video at 16:16–28; Sromovsky Video at 2:03.) Sromovsky asks Lopez "What the fuck are you crying for, huh?" to which Lopez responds, "I don't fucking cry for nothing." (Revels Video at 16:24–28; 2:05–08; Sromovsky Video at 2:03–07; Am. Compl. ¶ 19.) Sromovsky then says, "I'll give you a reason to cry, bitch" and hits Lopez in the face. (Revels Video at 16:28–30, 16:33–34; Am. Compl. ¶ 19.) Lopez yells, "Give

---

[4] Lopez testified that he was not resisting, merely expressing discomfort because both of his elbows are "bad" from childhood injuries. (Hr'g Tr. at 32–33.)

3

me more," intermittently grunting and struggling in the front seat of the police car at times leaning out of view.[5] (Revels Video at 16:30–56; Sromovsky Video at 2:22–28; Am. Compl. ¶ 19.) Sromovsky can be heard again goading Lopez, saying "Do you want more?" and "Shut up you little bitch." (*Id.*) Lopez asserts that Sromovsky hit him again. The second alleged strike is not apparent on the video, though, at one point, Lopez jerks back as if hit for a second time. (Am. Compl. ¶ 19; Revels Video at 16:37.)

Lopez is left alone in the front seat of Revels' car for approximately two and a half minutes. (Revels Video at 16:56–19:27; Sromovsky Video at 4:53–58.) He continues to struggle, repeatedly banging his head against the car door, and his nose begins to bleed. (Revels Video at 17:14.) He is then moved from Revels' car to the backseat of the car of another responding Trooper, Brian Naylor. (Revels Video at 16:56–19:27; Sromovsky Video at 4:53–9:17; Pl.'s Ex 2 "Naylor Stream 2 Video" at 8:10; Am. Compl. ¶ 20.) Lopez asserts that, during the transfer, Sromovsky further assaulted him. (*Id.*) The audio picks up a struggle in which Lopez apparently falls to the ground, after which Revels orders Lopez to stop resisting. (*Id.* at 5:07–18; *id.* at 7:01–04 ("What did he fall face first onto the ground? Yeah, he hit his face."); Hr'g Tr. at 19 ("I fell face down onto the cement.").) Lopez can be heard wailing and grunting as the police attempt to get him to cooperate. Eventually, Lopez is placed in the back of Naylor's car, bleeding from several gashes on his face. (*Id.* at 9:17; Naylor Stream 2 Video at 8:10–58.)

At the evidentiary hearing, Lopez testified that his memory of the events was limited because he was intoxicated at the time and could not remember anything that

---

[5] At the hearing, Lopez acknowledged that he "kind of went crazy." (Hr'g Tr. at 29.) That comment was not limited to his behavior in the car.

4

occurred after he fell to the ground. (Hr'g Tr. at 19, 21.) He confirmed that Sromovsky hit him in the face while he was handcuffed and seated in Revels' car. (*Id*. at 19, 21, 28–29.) He also testified, consistent with an allegation in his Amended Complaint, that he was further assaulted by Sromovsky outside of the vehicle. (Am. Compl. ¶ 20; Hr'g Tr. at 22–23.) Lopez testified that this occurred both before and after he was placed in Revels' car. (*See* Hr'g Tr. at 22–24.) The video evidence, however, shows that Sromovsky arrived at the scene when Lopez was in Revels' car; Sromovsky could not have assaulted him before then.[6] With respect to the later assault, Lopez testified that three or four troopers came over, hit him, threw him to the ground, dragged him and then shoved him inside of Naylor's car. (Hr'g Tr. at 24.) He believes that Sromovsky is the one who dragged him. (*Id*.)

Lopez sustained injuries to his face, as well as other parts of his body. (Am. Compl. ¶ 20; Pl.'s Ex. 1; Hr'g Tr. at 19, 22, 25–26.) Plaintiff's Exhibit 1 is a picture of Lopez's face, taken twelve hours after the incident. The picture shows significant bruising to the left side of his face along with lacerations on his forehead, nose, lip, chin and left cheek. (*See* Pl.'s Ex. 1; Hr'g Tr. at 19, 26.) Lopez testified that following the incident, he "had pain all over [his] body[,]" including his rib cage, thighs, legs, shoulders and neck. (Hr'g Tr. at 30.) The most significant injury was to his shoulder, which he said he could not move for approximately one month. (*Id*. at 32.) He also chipped some of his teeth. (*Id. at 30*.) Lopez continues to have headaches, swelling in his neck, difficulty sleeping and suffers from depression as a result of the incident. (*Id*. at 31, 33–36; Am. Compl. ¶ 22.)

---

[6] Review of the video evidence, specifically a comparison of the Revels and Sromovsky videos, shows that Sromovsky arrived at the scene and got out of his car approximately ten seconds before engaging Lopez and after Lopez was already handcuffed and seated in Revels' car.

5

B

On January 17, 2017, Sromovsky was arrested and charged with assault, harassment, official oppression and making terroristic threats. (Am. Compl. ¶ 24.) Lopez relies on Sromovsky's criminal case and cites its docket in support of his claims. (*Id*. at ¶¶ 24–25.) Sromovsky was acquitted on November 16, 2017 on the official oppression and terroristic threats charges but the jury was unable to reach a verdict on the assault charge. *See* Jury Verdict, *Pennsylvania v. Sromovsky*, CP-15-CR-00001137-2017 (Chester County Pa. Ct. Common Pleas Nov. 16, 2017). Sromovsky was retried and on May 16, 2018 convicted of simple assault and attempted simple assault. *See* Jury Verdict, *Pennsylvania v. Sromovsky*, CP-15-CR-00001137-2017 (Chester County Pa. Ct. Common Pleas May 16, 2018).

Lopez filed suit on May 12, 2017 (ECF No. 1), later amending his complaint (ECF No. 8). The Amended Complaint asserts seven claims under 42 U.S.C. § 1983 and state law against Sromovsky in his individual capacity[7] and Pennsylvania State Police Commissioner Tyree Blocker. The Court granted Blocker's motion to dismiss all claims against him on February 27, 2018 (ECF Nos. 14 & 15) and at the evidentiary hearing Lopez withdrew Count I for abuse of process against Sromovsky (Hr'g Tr. at 9; Supp. at 12). The four remaining claims are Counts II and III, alleging battery and intentional infliction of emotional distress (Am. Compl. ¶¶ 33–52) and Counts VI and VII, asserting excessive force and retaliation in violation of § 1983 (*id*. at ¶¶ 70–85).

---

[7] In his supplemental briefing, Lopez clarifies that he is suing Sromovsky only in his individual, and not his official, capacity. (*See* Supp. at 6, ECF No. 27; Am. Compl. ¶ 9; *contra* Am. Compl. ¶ 7.)

II

The entry of default judgment is within the Court's discretion and is governed by Federal Rule of Civil Procedure 55. *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000). As an initial matter, the Court should determine whether "the unchallenged facts constitute a legitimate cause of action," *Broad. Music, Inc. v. Spring Mount Area Bavarian Resort, Ltd.*, 555 F. Supp. 2d 537, 541 (E.D. Pa. 2008) (quotation omitted), and whether the Court has jurisdiction over the subject matter and the parties, including whether service was proper, *see D'Onofrio v. Il Mattino*, 430 F. Supp. 2d 431, 436 (E.D. Pa. 2006) ("A default judgment entered without personal jurisdiction is void."). If so, courts typically consider three factors in assessing whether to enter default: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct. *See United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984). If the entry of default judgment is appropriate, the Court must then determine the appropriate amount of damages. *See* Fed. R. Civ. P. 55(b)(2).

III

A

The Court has jurisdiction over both the subject matter and the parties. The Court has federal question jurisdiction over Lopez's § 1983 claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over his state law claims for assault and intentional infliction of emotional distress, 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the [] courts shall have supplemental jurisdiction over all other claims that are so related . . . that they form

7

part of the same case or controversy[.]"). Additionally, the Court has personal jurisdiction over Sromovsky because the incident occurred in Pennsylvania and he was properly served.[8] (*See* Hr'g Tr. at 5.)

B

Under Pennsylvania law, "battery is defined as an intentional harmful or offensive contact with the person of another." *Martin-McFarlane v. City of Phila.*, 299 F. Supp. 3d 658, 670 (E.D. Pa. 2017) (quotation omitted). No intent to harm is needed; the fact that contact occurs without consent is sufficient to establish that the contact is offensive. *Id.* The video shows Sromovsky striking Lopez in the face once, and possibly twice, while Lopez is seated, handcuffed and belted in Revels' police cruiser.

The same conduct constitutes the use of excessive force. Claims that law enforcement officers used excessive force in the course of an arrest[9] are analyzed under the Fourth Amendment's reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Davenport v. Borough of Homestead*, 870 F.3d 273, 279 (3d Cir. 2017). Determining whether the force used was reasonable requires careful consideration of the facts and circumstances of each particular case, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396; *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004).

---

[8] Service was made upon Sergeant Kevin Creighton, Patrol Supervisor, at the Pennsylvania State Police Avondale Barracks pursuant to Pennsylvania law which allows for service "at any office or usual place of business of the defendant to his agent or to the person for the time being in charge thereof." Pa. R. C. P. 402(a)(2)(iii); *see* Fed. R. Civ. P. 4(e)(1). (*See* Proof of Service, ECF No. 10; Hr'g Tr. at 4, 6–8.) All additional filings have been sent to Sromovsky at both his home and business addresses. (*See, e.g.*, Hr'g Tr. at 6–8.)

[9] "[A]n arrest is a continuing event that does not end as soon as a suspect is first restrained." *United States v. Johnstone*, 107 F.3d 200, 205 (3d Cir. 1997).

8

Despite the fact that Lopez's drunken belligerence resulted in an unnecessary confrontation, Sromovksy punched Lopez while he was handcuffed and secured in Revels' cruiser. There was no need or justification for Sromovsky's use of force at that time.

Further, the facts support a retaliation claim. The First Amendment "prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out." *Benkoski v. Wasilewski*, No. 07-CV-0197, 2007 WL 2670265, at *8 (M.D. Pa. Sept. 7, 2007) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)). To establish a § 1983 claim for retaliation, the plaintiff must show: "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his or her constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Clifton v. Borough of Eddystone*, 824 F. Supp. 2d 617, 627 (E.D. Pa. 2011) (citing *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006)). "The effect of the retaliatory conduct 'need not be great' to be actionable 'but it must be more than *de minimus*.'"[10] *Clifton*, 824 F. Supp. 2d at 628 (quoting *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006)). Lopez alleges that he was emotionally upset and voicing his frustration at how the troopers were treating him (Am. Compl. ¶ 18), provoking Sromovsky to punch him. Such conduct is sufficient to state a claim for retaliation for constitutionally protected speech. *City of Houston v. Hill*, 482 U.S. 451, 461 (1987) (holding that the First Amendment "protects a significant amount of verbal criticism and challenge directed at police officers"); *Clifton*, 824 F.

---

[10] "[P]laintiffs need not claim that they were in fact deterred, but only that the Defendant's alleged actions 'were capable of deterring a person of ordinary firmness.'" *Benkoski*, 2007 WL 2670265 at *8 (quoting *Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 821 (6th Cir. 2007)).

9

Supp. 2d at 627–28 (holding that cursing at police officer was protected speech under the First Amendment); *Spaddy v. Se. Pa. Transp. Auth.*, No. 15-2995, 2016 WL 3914034, at *6 (E.D. Pa. July 20, 2016) (finding protest to officers' actions protected speech for purposes of retaliation claim); *Karmo v. Borough of Darby*, No. 14-CV-2797, 2014 WL 4763831, at *4 (E.D. Pa. Sept. 25, 2014) ("[O]ne is not to be punished for nonprovocatively voicing his objection to what he obviously felt was a highly questionable detention by a police officer." (quoting *Norwell v. City of Cincinnati, Ohio*, 414 U.S. 14, 16 (1973) (per curiam))).

The Court, however, will not enter judgment in Lopez's favor on his claim for intentional infliction of emotional distress. To recover on such a claim, a plaintiff must show: "(1) extreme and outrageous conduct; (2) that was either intentional or reckless; (3) which caused emotional distress; and (4) that the emotional distress [is] severe." *Martin-McFarlane*, 299 F. Supp. 3d at 671 (citation omitted). Severe emotional distress includes "fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry and nausea[,]" *Lane v. Cole*, 88 F. Supp. 2d 402, 407 (E.D. Pa. 2000) (citation omitted), and must be supported "with competent medical evidence that the plaintiff actually suffered the claimed distress," *Arnold v. City of Phila.*, 151 F. Supp. 3d 568, 579 (E.D. Pa. 2015) (citing *Kazatsky v. King David Mem'l Park, Inc.*, 527 A.2d 988 (Pa. 1987)).

While the facts alleged in the Amended Complaint and testified to at the hearing are sufficient to meet the first three factors of an IIED claim,[11] Lopez's claim fails on

---

[11] *See, e.g.*, *Mirra v. Fynes*, No. 13-1677, 2015 WL 2118042, at *5 (E.D. Pa. May 6, 2015) ("A jury might reasonably conclude that a physically unprovoked assault on a member of the community by a police officer during a traffic stop constitutes an abuse of [] trust that is particularly outrageous.") (quotation omitted).

the final factor. Lopez's Amended Complaint alleges that he suffered "severe emotional trauma" as a result of Sromovsky's conduct. At the hearing, Lopez testified that since the incident he has difficulty sleeping and experiences stress and depression, but is not suicidal. (Hr'g Tr. at 33–35.) Lopez, however, did not offer any medical evidence in support of his claim and he attributed his depression, in part, to being imprisoned. (*See id*. at 9–10, 35–36.) Lopez's testimony suggests only mild to moderate emotional distress and the Court declines to enter judgment and assess damages where the record is devoid of competent medical evidence supporting his claimed distress.

C

Entry of default judgment against Sromovsky is appropriate in this case. Lopez would be prejudiced by its denial. Sromovsky was served approximately nine months ago yet never defended the action. "Considerable delays" are sufficient to show prejudice to the plaintiff. *Grove v. Rizzi 1857 S.P.A.*, No. 04-2053, 2013 WL 943283, at *2 (E.D. Pa. Mar. 12, 2013). Further, Lopez is currently incarcerated due to an Immigration and Customs Enforcement detainer and is subject to a deportation order. (Hr'g Tr. at 17.) *Grove*, 2013 WL 943283, at *2 ("There also may be sufficient prejudice where lack of a judgment might extinguish a plaintiff's ability to recover from a defendant") (internal quotation and citation omitted); *see also State Farm Fire & Cas. Co. v. Hunt*, No. 14-06673, 2015 WL 1974772, at *4 (E.D. Pa. May 4, 2015) (holding that plaintiff "is prejudiced by [defendants'] ignoring this litigation, protracting the dispute between the parties and effectively foreclosing [plaintiff] from relief for the foreseeable future").

Sromovsky's failure to "engage[] in the litigation process" constitutes "culpable conduct with respect to the entry of a default judgment—indeed, for the Court to conclude otherwise would be to reward the recalcitrant or the oppositional and uncooperative." *E. Elec. Corp. of N.J. v. Shoemaker Constr. Co.*, 657 F. Supp. 2d 545, 554 (E.D. Pa. 2009). Lastly, although Sromovsky has the litigable defenses of sovereign and qualified immunity, the entry of judgment is not barred by either doctrine.

Generally, "[t]he showing of a meritorious defense is accomplished when 'allegations of defendant's answer, if established on trial, would constitute a complete defense to the action.'" *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984) (quoting *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)). Sromovsky has failed to answer and defend against Lopez's Amended Complaint and "the court may presume that an absent defendant who has failed to answer has no meritorious defense because it is not the court's responsibility to research the law and construct the parties' arguments for them." *Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 271 (E.D. Pa. 2014) (citations and internal quotations omitted). However the nature of immunity is protection from suit rather than a mere defense, *see Pearson v. Callahan*, 555 U.S. 223, 237 (2009); *Giles v. Kearney*, 571 F.3d 318, 325–26 (3d Cir. 2009) ("Qualified immunity is a complete immunity from suit, not just a defense to liability, and is considered at the earliest possible stage of proceedings, apart from the analysis of the underlying claim itself."), and the Court will analyze its applicability to Sromovsky's conduct.

Pennsylvania courts have held that "'when an employee of a Commonwealth agency was acting within the scope of his or her duties, the Commonwealth employee is

12

protected by sovereign immunity from the imposition of liability for intentional tort claims.'" *Watley v. Felsman*, No. 3:16-CV-2059, 2018 WL 1532953, at *9 (M.D. Pa. Mar. 29, 2018) (quoting *Minor v. Kraynak*, 155 A.3d 114, 121–22 (Pa. Cmwlth. Ct. 2017)). "Conduct of an employee is within the scope of employment only if: (1) it is of a kind that the employee is employed to perform; (2) it occurs substantially within the authorized time and space limits; (3) it is calculated, at least in part, by a purpose to serve the employer; and (4) if force is intentionally used by the employee against another, it is not unexpected by the employer." *Watley*, 2018 WL 1532953, at *10 (quoting *Garcia v. Hibson*, Civ. No. 11-4073, 2011 WL 4901358, at *5 (E.D. Pa. Oct. 14, 2011)).

Courts have held that the unnecessary, unjustified and unprovoked use of force falls outside the scope of employment. *See Wesley v. Hollis*, No. CIV.A. 03-3130, 2007 WL 1655483, at *15 (E.D. Pa. June 6, 2007) ("Where the alleged intentional tort was unprovoked, unnecessary or unjustified by security concerns or penological goals, courts have ruled that such conduct does not, as a matter of law, fall within the scope of employment."); *Velykis v. Shannon*, No. 06-0124, 2006 WL 3098025, at *4 (M.D. Pa. Oct. 30, 2006) ("The intentional use of force alleged here is not of a kind and nature [defendant] was employed to perform[.] [W]hile the Department would expect that force might be used at some point against an inmate, it would not expect the deliberate and unjustified use of force, apparently totally divorced from any need of the officer to exert control over the prisoner."). Striking a handcuffed arrestee while seated and handcuffed in a police car is unnecessary, unjustified and unprovoked force that does not, as a matter of law, fall within the scope of employment.

Further, with respect to the § 1983 claims, the doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson*, 555 U.S. at 231; *Sharrar v. Felsing*, 128 F.3d 810, 826 (3d Cir. 1997). Courts must inquire "whether a reasonable officer could have believed that his or her conduct was lawful, in light of the clearly established law and the information in the officer's possession." *Sharrar*, 128 F.3d at 826. Thus, if an officer "reasonably but mistakenly" believed their conduct was permissible, they are entitled to immunity. *Eckman v. Lancaster City*, 742 F. Supp. 2d 638, 658 (E.D. Pa. 2010) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).

This is not a case in which Sromovsky's conduct can be justified by the circumstances of the arrest—he hit Lopez in the face, apparently for sport, while Lopez was handcuffed in Revels' car. This conduct constituted the use of excessive force and retaliation and violated Lopez's clearly established rights. *See, e.g.*, *Giles*, 571 F.3d at 326 ("[A]t the time of the incident in 2001, it was established that an officer may not kick or otherwise use gratuitous force against an inmate who has been subdued."); *Smith v. Mensinger*, 293 F.3d 641, 649 (3d Cir. 2002) ("Punching and kicking someone who is handcuffed behind his back . . . is 'repugnant to the conscience of mankind,' absent the extraordinary circumstances necessary to justify that kind of force.").

IV

After granting a motion for default judgment, the Court must calculate the appropriate damages. *See Rios v. Marv Loves 1*, No. 13-1619, 2015 WL 5161314, at *13 (E.D. Pa. Sept. 2, 2015). Lopez seeks compensatory damages for his pain, suffering,

14

humiliation, depression and other mental distress, as well as punitive damages to reflect the egregiousness of Sromovsky's conduct. (Supp. at 19.)

Compensatory damages in § 1983 cases "are designed to provide compensation for the injury caused to plaintiff by defendant's breach of duty" and "may include not only out-of-pocket loss and other monetary harms, but also such injuries as impairment of reputation, personal humiliation, and mental anguish and suffering." *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986) (internal citations and modifications omitted); *Robinson v. Fetterman*, 378 F. Supp. 2d 534, 545 (E.D. Pa. 2005) ("[Plaintiff] is entitled to compensatory damages for any monetary loss, humiliation, and mental anguish caused by the defendants' deprivation of his constitutional rights."). Further, "a plaintiff may recover compensatory damages on a claim for civil battery based on physical injuries as well as emotional injuries such as feelings of shock, fright, or humiliation." *Schall v. Vazquez*, 322 F. Supp. 2d 594, 602 (E.D. Pa. 2004).

Lopez does not claim a monetary loss, but he is entitled to $5,000 in compensatory damages for the pain, humiliation and mental anguish suffered as a result of Sromovsky striking him while handcuffed in Revels' car. (*See* Hr'g Tr. at 37.) Lopez was unable, however, to establish during the hearing that Sromovsky caused any of his physical injuries. Lopez testified that three to four troopers threw him down and dragged him to Naylor's car, and that he believes Sromovsky was the one who dragged him. Lopez does not contend that Sromovksy threw him down or struck him further. (*See id*. at 22–24.)

The Court also awards Lopez $15,000 in punitive damages for Sromovsky's callous indifference. Such damages may be awarded in a § 1983 action "'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Robinson v. Fetterman*, 378 F. Supp. 2d 534, 545 (E.D. Pa. 2005) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)); *Brennan v. Norton*, 350 F.3d 399, 428 (3d Cir. 2003); *Korth v. Hoover*, 190 F. Supp. 3d 394, 411 (M.D. Pa. 2016) ("Punitive damages are permitted against individual defendants in a federal civil-rights action when the defendant's conduct is 'at a minimum, reckless or callous.'" (citing *Springer v. Henry*, 435 F.3d 268, 281 (3d Cir. 2006)). Factors to consider include: (1) the nature of a defendant's conduct, (2) the impact of a defendant's conduct on the plaintiff, and (3) the likelihood that a defendant will repeat the conduct if a punitive award is not made. *Robinson*, 378 F. Supp. 2d at 545 (citing *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 19 (1991)). Sromovsky's conduct in striking someone who was already seated, handcuffed and defenseless warrants the imposition of punitive damages.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.